# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7404 | **DATE** | 12/2/2003 |
| **CASE TITLE** | Gonzalez vs. Neustar | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)　☐ Local Rule 41.1　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).

(10) ■ [Other docket entry]　For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment is granted. Enter Memorandum Opinion and Order. Case closed. Any pending dates or motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | DEC 0 4 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 29 |
| ✓ | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| MF | courtroom deputy's initials | | 03 DEC -3 PM 3: 39 | date mailed notice | |
| | | | date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

DEC 0 4 2003

RAMONITA GONZALEZ,      )

     )

    Plaintiff,      )

     )

    v.      )     No: 02 C 7404

     )

NEUSTAR, INC.,      )     Judge John W. Darrah

     )

    Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ramonita Gonzalez ("Gonzalez"), filed suit against Defendant, NeuStar, Inc. ("NeuStar"). Gonzalez alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Presently before the Court is NeuStar's Motion for Summary Judgment. For the reasons that follow, NeuStar's Motion for Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show

29

that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at

322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*,

24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind.*

*Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary

judgment, a court must view all inferences to be drawn from the facts in the light most favorable

to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185

F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475

U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more

than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule

56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1") and

exhibits, are as follows.

*The Flashing Incident*

NeuStar is a corporation with its main office in Sterling, Virginia; but it has operations in

several other states. Until 2002, NeuStar had a data center in Chicago, Illinois, where Gonzalez

worked. Def.'s 56.1 ¶ 1. Glen Wiorek and Gonzalez were co-workers at NeuStar. Wiorek had

no supervisory authority over Gonzalez. Def.'s 56.1 ¶ 3.

On January 29, 2002, Wiorek exposed the tip of his penis to Gonzalez. Def.'s 56.1 ¶ 2.

The incident lasted "a minute or so." Def.'s 56.1 ¶ 4. At the time of the incident, Wiorek was

standing no more than one or two feet from Gonzalez. Pl.'s 56.1 ¶ A. However, Wiorek never touched, sexually propositioned, or said anything crude to Gonzalez. Def.'s 56.1 ¶ 5.

The incident occurred in Gonzalez's cubicle during normal business hours when other employees were around. The cubicle is not isolated or private; other people can see into it from the hallway, and people in nearby cubicles and the hallway can overhear conversations in Gonzalez's cubicle. Def.'s 56.1 ¶ 6. After the incident, Wiorek did not try to stop Gonzalez from leaving her cubicle. Def.'s 56.1 ¶ 7.

Before the incident, Wiorek had never behaved inappropriately in Gonzalez's presence. Def.'s 56.1 ¶ 8. Gonzalez heard, that on other occasions, Wiorek exposed his penis and sexually harassed other NeuStar employees. Pl.'s 56.1 ¶¶ B-C, G. Gonzalez was told that these employees reported the incidents to their superiors, but NeuStar did not terminate Wiorek nor limit his contact with female employees. Pl.'s 56.1 ¶¶ D-F, H-I.

After the incident, Gonzalez never saw Wiorek again. Def.'s 56.1 ¶ 9. Gonzalez worked from home until Wiorek was suspended by NeuStar; Wiorek was subsequently fired. Def.'s 56.1 ¶ 9. Gonzalez alleged no other forms of sexual harassment in her EEOC complaint. Def.'s 56.1 ¶¶ 10-15.

*Ramonita Gonzalez's Termination*

Gonzalez held the position of Technical Support Analyst ("TSA") at NeuStar. As a TSA, Gonzalez's main duty was to run computer programs, including Access database programs, to download data for monthly reports; Gonzalez regularly "pulled data" for approximately 27-28 different "SLR" reports. Gonzalez did not make any discretionary decisions about how to interpret that data nor did she create the underlying computer programs on her own. Def.'s 56.1

¶ 20; Pl's Answer. to Def.'s 56.1 ¶ 32. In contrast, many other employees working in Gonzalez's department were engineers. Engineers can take as long as six to twelve months to learn the nuances of NeuStar's system and become fully productive, which makes them difficult and costly to replace. Def.'s 56.1 ¶ 21.

In December 2001, NeuStar decided to reduce costs by closing the Chicago facility and relocating those operations to Virginia. Def.'s 56.1 ¶ 16. In early March 2002, Steve Cory, another Vice President at NeuStar, began supervising some of Guo's employees. Cory became Gonzalez's new manager at this time. Cory Aff. ¶ 10. On March 15, 2002, Cory made the decision to terminate Gonzalez's employment instead of offering her a relocation package. Def.'s 56.1 ¶ 18. Cory viewed Gonzalez's position as largely clerical in nature and not difficult or costly to replace. Def.'s 56.1 ¶ 22; Pl.'s Answer to Def.'s 56.1 ¶ 22.

However, Gonzalez did tell Ky Quan, another employee Cory supervised, about the January 29, 2002 incident with Wiorek. Quan became Gonzalez's second-level manager between March and April of 2002. Quan also told Gonzalez that he told George Guo about Gonzalez's sexual harassment claim. Gonzalez Dep. at 141-42. At some time between March and May of 2002, Quan learned that Cory had decided to terminate Gonzalez's employment rather than relocate her. Def.'s 56.1 ¶ 24.

More than ten other Chicago-based employees, none of whom complained about any sexual harassment problems, were terminated in connection with the closing of the Chicago facility at or around the same time Gonzalez was terminated. Def.'s 56.1 ¶ 23. One employee who was terminated was Toni Hopkins. Cory also viewed Hopkins's position as largely clerical in nature and not difficult or costly to replace. Def.'s 56.1 ¶ 22; Pl.'s Answer to Def.'s 56.1 ¶ 22.

4

Most of these terminations took effect in May or June of 2002. However, the Chicago facility did not close at that time. There was a transition period, during which functions were gradually transferred from Chicago to Virginia. Later in 2002, a few additional employees that were kept on to help during the transition period were terminated. Cory Aff. ¶ 19.

One of the employees whom NeuStar retained during the transition period was Katie Campbell. Prior to June 2002, Campbell had a wide variety of duties. Campbell served as NeuStar's point person with outside auditors, who regularly audited the corporation. Moreover, Campbell had various financial responsibilities, such as assisting in developing a budget for Gonzalez's department and tracking various expenses to ensure that this department stayed within its budget. Campbell also processed the payroll, had human resources and recruiting duties, and represented the entire department in monthly meetings with personnel from the main office in Virginia. Def.'s 56.1 ¶ 25. Some of Campbell's duties required her to make discretionary decisions. Furthermore, Campbell's duties required her to keep informed about all major projects and problems in her department, including issues regarding the data that Gonzalez downloaded and tabulated. Def.'s 56.1 ¶ 27.

Quan decided that, during the transition period, Campbell would continue to perform her own duties and would also assume: (1) Gonzalez's duties of running the computer programs to download data and tabulate it for reports and (2) receptionist's duties. Def.'s 56.1 ¶ 27, Quan Aff. ¶ 1. Quan believed that Campbell could easily learn to perform Gonzalez's and the receptionist's duties, but neither of them could easily learn Campbell's duties. Quan also believed that having Campbell temporarily assume Gonzalez's duties might facilitate some improvements in the process for downloading and tabulating data. Def.'s 56.1 ¶ 28.

However, Quan did not believe that he even had the option of allowing Gonzalez to continue in her job past June 2002. Cory, Quan's superior, had already decided that Gonzalez's employment would terminate at the end of June. On the other hand, Campbell was not slated to be terminated at the end of June; Quan's superiors offered Campbell a relocation package and asked her to stay beyond June. Quan Aff. ¶ 6.

During July 2002, Campbell spent at least 50% of her time handling her own duties, approximately 30% of her time handling Gonzalez's former duties, and approximately 20% of her time handling the receptionist's former duties. Def.'s 56.1 ¶ 30. On or about August 1, 2002, Campbell resigned. By that time, NeuStar had converted to Oracle database programs, instead of Access database programs, for the most time consuming SLR reports. Using Oracle reduced the time required to run the reports from several days each to several hours. Def.'s 56.1 ¶ 31.

## ANALYSIS

Gonzalez brings two separate claims for discrimination under Title VII. First, Gonzalez alleges that she was the victim of sexual harassment because of the hostile work environment at NeuStar based on the incident with Wiorek on January 29, 2002. Secondly, Gonzalez asserts that NeuStar retaliated against her for reporting this allegedly hostile work environment by: (1) terminating Gonzalez's employment instead of offering her a relocation package that was offered to other employees; and (2) terminating Gonzalez on June 30, 2002, even though her function was performed in Chicago for a few more months during the transition period.

*Hostile Work Environment*

No genuine issue of material fact exists showing that a hostile work environment existed

at NeuStar. Claims for sexual harassment based on a hostile work environment are actionable

under Title VII. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 73 (1986). "To state [a] claim of

sexual harassment based on hostile work environment," a plaintiff must prove that:

> (1) she was subjected to unwelcome sexual advances, requests for sexual favors,
> or other verbal or physical conduct of a sexual nature; (2) the conduct was severe
> or pervasive enough to create a hostile work environment; (3) the conduct was
> directed at her because of her sex; and (4) there is a basis for employer liability.

*Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 903 (7th Cir. 2003) (citations omitted).

To prove the "hostile work environment" element, a work environment must be "so

severe or pervasive to alter the conditions of [the victim's] employment and create an abusive

working environment." Moreover, the work environment must be both subjectively and

objectively hostile. A number of factors determine whether conduct is objectively hostile,

including: (1) the frequency of the hostile conduct; (2) the severity of the conduct; (3) whether

the conduct is physically threatening or humiliating or is just a mere offensive utterance; and (4)

whether the conduct unreasonably interferes with an employee's job performance. *Quantock*,

312 F.3d at 903-04. Although no bright line determines when an action is objectively hostile,

*Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2002) ("*Hostetler*"), the Supreme

Court has made clear that the "conduct must be extreme" to satisfy the objective prong.

*Farragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Actual physical contact is generally considered more severe or pervasive. *Hostetler*, 218

F.3d at 809. In contrast, expressive conduct without any physical touching of the victim is not

generally severe or pervasive enough to alter the conditions of employment. *EEOC v. Champion Int'l Corp.*, 1995 U.S. Dist LEXIS 11808, at * 26 (N.D. Ill. Aug. 1, 1995) (*"Champion Int'l"*). A "single incident, which [is] of very limited duration and included nothing but expressive behavior, with no follow-up or repeat, is simply not enough to violate Title VII as sexual harassment." *Champion Int'l*, 1995 U.S. Dist LEXIS 11808, at * 26.

In this case, Wiorek's conduct could not be described as physical, intimate, or forcible. Wiorek did not physically touch Gonzalez; Wiorek did not sexually proposition Gonzalez, and Wiorek did not make any crude comments to Gonzalez. In addition, the incident only lasted "a minute or so." The infrequent, one-time incident did not take place in an intimate setting; instead, it occurred in a place where other co-workers could see and hear, Gonzalez's cubicle. Finally, Wiorek made no attempt to stop Gonzalez from leaving the cubicle after the incident occurred. Although the incident was lewd, Wiorek's conduct was more akin to the expressive conduct in *Champion International*. Therefore, the incident, by itself, was not so "severe or pervasive" to alter the conditions of Gonzalez's employment.

If a victim must work closely with the harassing co-worker, the harassment alters the condition of the working environment. *Quantock*, 312 F.3d at 904. "Given that [the supervisor] made his repeated requests for sex *directly* to [the plaintiff] and in light of [the supervisor's] significant position of authority at the company and the close working quarters within which he and [the plaintiff] worked, a reasonable jury could find the sexual propositions sufficiently 'severe,' as an objective matter, to alter the terms of [the plaintiff's] employment."

Here, nothing existed in Wiorek's and Gonzalez's working relationship to alter the condition of her working environment after the incident occurred. Wiorek was not Gonzalez's

8

supervisor. The two did not work together in close quarters. In addition, Gonzalez never saw

Wiorek after the incident took place because Wiorek was suspended and then fired.

Gonzalez contends that a genuine issue of material fact exists on this issue because

NeuStar was on notice of Wiorek's previous acts of harassment and created the circumstances

that led to the incident by failing to appropriately discipline Wiorek. However, "the impact of

'second-hand' harassment is obviously not as great as the harassment directed toward" the

victim. *Patt v. Family Health Sys.*, 280 F.3d 749, 754 (7th Cir. 2002); *see also Mason v. S.*

*Illinois Univ.*, 223 F.3d 1036, 1047 n.9 (7th Cir. 2000) (explaining that "through the grapevine"

or "second-hand" comments about harassing conduct is not enough to be "severe or pervasive");

*cf. Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (finding that racially

discriminative remarks made outside the presence of the plaintiff were not actionable). The

employer's knowledge of these prior incidents does not show whether a hostile work

environment existed; but, rather, it shows whether a basis for the employer's liability exists.

*Brooks v. City of San Mateo*, 229 F.3d 917, 925 n.5 (9th Cir. 2000).

Here, Gonzalez alleges that various co-workers told Gonzalez that they were also subject

to sexual harassment by Wiorek. However, if Wiorek's conduct of January 29, 2002, that

Gonzalez witnessed is not sufficiently pervasive, then hearing about other incidents cannot be

found to be a hostile work environment. NeuStar's knowledge of any prior events may be

relevant only to show a basis for employer liability once harassing conduct has been established.

Therefore, the "second-hand" statements, describing similar conduct made outside the presence

of Gonzalez, are not sufficiently severe or pervasive enough to raise a genuine issue of material

fact even though NeuStar may have had knowledge of these events.

*Retaliatory Actions*

In a Title VII retaliation action, the plaintiff may either proceed under the direct or indirect method to overcome a defendant's motion for summary judgment. *Sitar v. Indiana Dep't of Transp.*, -- F.3d -- , 2003 WL 22227972 (7th Cir. 2003) (citing *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir. 2002)). Under the indirect method, which is the only method Gonzalez is using, a plaintiff must first establish a *prima facie* case of discrimination. To establish a *prima facie* case of retaliation:

> the plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse employment action. At this point, the burden of production shifts to the defendant; but the burden of persuasion still remains with the plaintiff. "Once the defendant presents a legitimate, non-invidious reason for the adverse action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual."

NeuStar claims that because Cory did not know about the sexual harassment claim, he could not retaliate against Gonzalez when he terminated her job. However, the decision-maker's lack of knowledge about a protected activity only goes to the causal nexus requirement of the direct method. *See, e.g., Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000) Therefore, any proof that Cory did not know about Gonzalez's sexual harassment claim is irrelevant under the indirect method.

10

However, *the plaintiff has the burden* of showing that she was treated less favorably than similarly situated employees who did not engage in the protected activities. This requirement also means that the plaintiff must show that another employee is similarly situated, "that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted).

Here, Gonzalez failed to meet her burden on this issue for both theories of retaliation. First, Gonzalez is unable to show that any other employee with the same supervisor, similar job requirements, experience, education, or qualifications was relocated instead of being terminated. The only evidence on this point is the affidavit of Steve Cory. Cory, who also made the decision to terminate Toni Hopkins, viewed both Hopkins's and Gonzalez's positions as largely clerical and not difficult or costly to replace. Gonzalez failed to produce any affidavits, depositions, answers to interrogatories, and admissions to demonstrate, through specific evidence, that a genuine issue of material fact exists on this issue. In fact, Gonzalez agreed with NeuStar that both positions were clerical and not difficult or costly to replace.

Secondly, Gonzalez cannot show that any similarly situated employees remained with the company during the transition period. Both Gonzalez and the receptionist were terminated; both had their duties taken over by Kelly Campbell. The only evidence on this point was presented by NeuStar. Campbell had a wide variety of duties, some of which required her to deal with financial matters and make discretionary decisions; Gonzalez, though, was only required to pull data – and not interpret that data – from different SLR reports. Once again, Gonzalez has failed to produce any affidavits, depositions, answers to interrogatories, and admissions to demonstrate, through specific evidence, that a genuine issue of material fact exists showing that Campbell, or

11

any other employee that NeuStar retained in Chicago during the transition period, was a similarly situated employee. Therefore, Gonzalez is unable to state a *prima facie* case of retaliation.

## CONCLUSION

For the foregoing reasons, NeuStar's Motion for Summary Judgment is granted.

Dated: December 2, 2003

JOHN W. DARRAH
United States District Judge